**In re Willie Charles JONES, Debtor.**

**SOUTHEAST BANK, N.A., Appellant,**

v.

**Willie Charles JONES, Appellee.**

Civ. A. No. 89–AR–1091–W.
Bankruptcy No. 89–00211.

United States District Court,
N.D. Alabama, W.D.

Oct. 12, 1989.

Charles E. Vercelli, Jr., Copeland Franco Screws & Gill, P.A., Montgomery, Ala., for appellant.

Philip Noah Lisenby, Burn Ellis Copeland & Lisenby, Tuscaloosa, Ala., for appellee.

## MEMORANDUM OPINION

ACKER, District Judge.

On September 22, 1989, this court rendered its opinion in *In re Hollis*, 105 B.R. 1003 (N.D.Ala.1989). That decision involved an appeal which had been consolidated with this appeal because each involved the same creditor, Southeast Bank, N.A., appealing from the same bankruptcy judge, and each raised similar issues. However, it became apparent to this court that the issues in the present appeal were sufficiently different from those in *In re Hollis* to require a somewhat different exposition, and therefore a separate opinion. The readers of this opinion are invited to read *In re Hollis*. A side-by-side reading may engender an understanding both of the reasons for the consolidation and the reasons for the separate treatment.

### The Factual and Procedural Background

On December 19, 1985, Willie Charles Jones filed a Chapter 13 petition, Case No. 85–08280, in the United States Bankruptcy Court for the Northern District of Alabama. At that time, Jones was past due on his monthly mortgage payments of $305.10 each to Southeast Bank, the lender on his residence in an original principal sum of $31,625.00. The arrearage at that time was $1,383.50. It was this default which precipitated Jones' 1985 Chapter 13 filing. On January 29, 1986, the bankruptcy court, Honorable George S. Wright, confirmed Jones' original plan, giving a preference of $35.00 per month to Southeast Bank to be applied to the arrearage, and separately requiring Jones himself to make his future regular monthly payments timely to Southeast Bank.

Jones failed to comply with this confirmation order in both respects (despite a subsequent reduction in his monthly wage deduction from $270.00 to $210.00), so, on November 10, 1986, Southeast Bank filed its *first* motion for relief from the stay. Three months later, on February 9, 1987 (no explanation appears for the delay between Southeast Bank's motion and its denial), the bankruptcy court denied Southeast Bank's motion for relief and instead (1) ordered Southeast Bank to file another proof-of-claim, this time for a new "folded in" arrearage of $1,119.20, (2) increased the debtor's proposed wage deduction, and (3) increased the monthly preference payments to Southeast Bank to $50.00 per month. This, of course, constituted a new and a substantially different plan.

Instead of standing flatfooted on February 9, 1987, and taking an immediate appeal as Southeast Bank did in *In re Hollis*, Southeast Bank opted for "going along." Accordingly, it filed another proof-of-claim for the new post-petition/post-confirmation arrearage. However, it soon was again disappointed, both because the "regular" monthly mortgage payments were not regular, and because there was a default in the $50.00 per month purportedly designed to "cure" the accumulated arrearages.

On September 14, 1987, Southeast Bank filed its *second* motion for relief from the stay. By this time the post-petition/post-confirmation arrearage had grown to $3,603.24. Again, the bankruptcy court denied Southeast Bank's motion for relief and, instead, ordered Southeast Bank to file another (the third) proof-of-claim for the increased post-petition/post-confirmation arrearage, and hopefully increased the monthly preference payments to $80.00 per month. Why the bankruptcy court thought that a debtor who could not, or would not, pay $35.00 per month, and could not, or would not, pay $50.00 per month, could and would pay $80.00 per month was and is not explained, especially in view of the bankruptcy court's rationale for the ultimate ruling from which this appeal is taken. Again knuckling under, Southeast Bank filed another proof-of-claim for arrearages by then aggregating $3,918.34.

The horror story, from the creditor's viewpoint, continued. Despite the court's orders and in violation of the terms of the once-again revised plan, neither Jones nor the Trustee made the monthly payments, whereupon Southeast Bank on January 2,

1989, filed its *third* and last motion for relief in Case No. 85–08280. A hearing was conducted on January 26, 1989, at which neither Jones nor the Trustee challenged in the slightest the poor payment history asserted by Southeast Bank. Jones simply left himself in the good hands of the bankruptcy court.

Instead of granting the relief requested by Southeast Bank, the bankruptcy court, on sudden and gratuitous motion of the Trustee, orally dismissed Case No. 85–08280. Although the record reflects that the only ground for the requested dismissal stated by the Trustee was that the plan then was "not feasible" (whatever that meant), the bankruptcy court, on January 30, 1989, confirmed in writing what it had already done orally. Without mentioning "feasibility," the bankruptcy court cited as the only basis for the dismissal that the "debtor has failed to comply with the terms of his extension proposal as confirmed by this court." It is difficult to judge which is more egregious: the confirmation of a third plan which was "not feasible," OR the debtor's failure to meet the terms of his first, of his second or of his third plan. In either event, the prompting by Southeast Bank's last motion for relief from stay brought to the Trustee's attention, after four years, that the plan was "not feasible."

In light of what happened thereafter, a convincing argument might be made that the obvious purpose for the bankruptcy court's dismissal was to obviate having to rule on Southeast Bank's motion for relief from the stay, which, if not granted, would have precipitated an appeal identical to the appeal *In re Hollis.* The dismissal did, in fact, provide an "end run" opportunity by paving the way for Jones to file a new Chapter 13 petition, automatically obtaining a new stay, and beginning a potential new five-year period of protection from foreclosure. The written order of dismissal was entered on January 30, 1989. Jones promptly took the hint. Two days later, he filed his current Chapter 13 petition, Case No. 89–00211.

On February 24, 1989, Southeast Bank filed its motion for relief in Case No. 89–00211 and simultaneously objected to the confirmation of a plan in Jones' new Chapter 13. The bankruptcy court heard these matters on March 30, 1989. On April 14, 1989, that court, without disagreeing with any of the evidence presented as to the factual background or to the amount ($6,924.89) or character of the arrearage, denied Southeast Bank's motion for relief and overruled Southeast Bank's objection to confirmation, whereupon Southeast Bank perfected this appeal and succeeded in having it consolidated with *In re Hollis.* Not until June 5, 1989, long after the appeal, did the bankruptcy court write a memorandum opinion attempting to justify its action. *Inter alia,* this admittedly permitted, after-the-fact opinion said:

The creditor is not entitled to relief from the automatic stay under Section 362(d)(1) for two reasons: First, the creditor has been provided adequate protection. Adequate protection is present in at least three forms: (A) current mortgage payments of $305.10 per month have been included in the Confirmation Order; (B) the creditor has been provided a fixed payment of $200.00 per month on arrearages; (C) a deduction order has been sent to the debtor's employer in accordance with Section 1325(c) "so that the debtor will be able to make all payments under the plan and to comply with the plan" as required by Section 1325(a)(6).

Second, Section 362(d)(1) is not available for the granting of relief to the creditor due to the fact that "cause" does not exist in this particular case. Clearly, Section 362(d)(1) contemplates the granting of relief "for cause" in addition to lack of adequate protection. The creditor has asserted that "cause" is present because of the debtor's non-compliance with the prior Confirmation Order of this Court. Although the debtor has missed payments that were required under the prior Confirmation Order, those missed payments were the result of injuries sustained by the debtor. The debtor has testified that he has returned to work

and has resumed the position he has held at Southern Railway for the last 15 years. The Court is satisfied that sufficient "cause" does not exist for the granting of relief.

Section 362(d)(2) is likewise unavailable for the granting of relief from the automatic stay in this particular case. Section 362(d)(2) has a dual requirement— that being: (1) the debtor does not have an equity in the property *and* (2) such property is not necessary to an effective reorganization. *In re Suter,* 10 B.R. 471 (Bankr.E.D.Pa.1981).

\* \* \* \* \* \*

The creditor has asserted that the debtor's plan should not be confirmed because of the debtor's failure to comply with prior Court orders. These prior orders stem from a Chapter 13 petition filed by debtor in 1985. Under the prior petition, the debtor missed *some* payments thereby causing the Standing Trustee to file a Motion to Dismiss for Failure to Comply. The dismissal motion was granted on January 30, 1989. It is the creditor's position that the debtor's noncompliance and prior dismissal constitutes a "willful failure of debtor to abide by order of the Court." The creditor's contention is ill-founded. The missed payments and subsequent dismissal were a result of the debtor's absence from work due to injuries. This does not constitute a "willful failure" of debtor to abide by orders of the Court. As already noted, the debtor has testified that [sic] has now recovered from the injuries and is continuing in the position of employment he has held for the past 15 years. Furthermore, this Court is satisfied that the debtor's plan meets a sufficient number of factors as set out in *In re Kitchens,* 702 F.2d 885 (11th Cir.1983), so as to establish the good faith requirement of the Chapter 13 plan. Inasmuch as the debtor is not guilty of a "willful failure" to comply, and has proposed the Chapter 13 plan in good faith, this court must accordingly overrule the objection to confirmation. (emphasis supplied).

To distinguish himself from the debtor in *In re Hollis,* Jones relies largely, if not entirely, on the alleged fact that he was sick or injured from September of 1986 through August of 1988. He pushes this sympathetic information forward as the only reason for his repeated failures to meet his obligations under any plan. He did testify in March, 1989, *for the very first time,* that he had sustained an injury and that he did not return to work until August of 1988, *but there is no medical evidence in the record as to the beginning or magnitude of Jones' impairment, or of his prognosis, or of his ability to work in any meaningful earning capacity during the period of disability he belatedly claimed. Moreover, there is nothing in the record to indicate that Jones ever notified the bankruptcy court of his injury until long after he had recovered. His motion seeking to reduce his payments, filed on October 14, 1986, failed to mention any injury. The record speaks loudly of the fact that he was on his employer's payroll, with a wage deduction order in effect, at all times pertinent.* As noted, the bankruptcy court, during this period, ratcheted upward Jones' formal obligations to Southeast Bank.

It appears, therefore, that Jones and the bankruptcy court are asking this court to consider matters *dehors* the record and/or matters contradicted by the record. If a severe dimunition in income because of an injury came to the attention of the bankruptcy court through the back door, that information was not available to that court, because not a *matter of record.* It is therefore not available to this court. The bankruptcy court's opinion of June 5, 1989 could have served as the appellee's brief. While this court must give Jones and the bankruptcy court the benefit of every doubt on all subjects, Jones, for aught appearing, was employed and was actually earning wages on each occasion the bankruptcy court confirmed a wage deduction plan with a progressively increasing preferential payment to Southeast Bank. The increased wage deductions with each modification are totally inconsistent with the kind of income loss between 1985 and 1988

now alleged by Jones for the first time on appeal. This court finds it incredible for Jones to ask this court to intuit some sort of evidentiary basis for the bankruptcy court's finding of an excuse for Jones' defaults between 1985 and 1988. This court cannot believe that the bankruptcy court would have ordered increased preferential payments while knowing that Jones' income had been drastically reduced. The "finding" of an excuse for Jones is simply not supported by the record.

Jones also chooses to ignore the fact that his is a case of serial filing, as distinguished from the modification of a single Chapter 13 proceeding. This court notes the distinction. The bankruptcy court must have thought the distinction significant because that court chose not to allow another modification in the pending Chapter 13 and chose not to require Southeast Bank, once again, to file a new proof-of-claim. As already noted, a logical explanation for the bankruptcy court's permitting a new Chapter 13 two days after dismissing an earlier Chapter 13 was to prevent an appeal identical to the appeal taken by Southeast Bank in *In re Hollis*.

■ This court earlier denied Southeast Bank's post-appeal motion to withdraw the reference. Instead, this court allowed Southeast Bank to supplement the appellate record with the undisputed facts that while this appeal has been pending Southeast Bank has received neither its regular monthly mortgage payments of $305.10 each as required by the most recent confirmation order, nor the $200.00 per month as ordered to be applied to the current arrearage of $6,050.02. Inasmuch as the bankruptcy court employed its right after the appeal to tailor its findings and conclusions, it is only proper that the appellant be permitted to supplement the record with factual material which clearly rebuts those findings and conclusions. This court, sitting as an appellate court, does have the inherent equitable power to supplement the record with relevant matters, even matters perhaps not considered by the court whose ruling is being reviewed. *Ross v. Kemp*, 785 F.2d 1467, 1474–75 (11th Cir.1986);

*Dickerson v. Alabama*, 667 F.2d 1364, 1367 (11th Cir.1982). This procedure was certainly preferable to withdrawing the reference post-appeal. The applicable principle was restated as recently as September 28, 1989 by the Eleventh Circuit: "[T]he overall circumstances compel the court to allow supplementation." *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1555 (11th Cir. 1989). The bankruptcy court now seems to find nothing significant in the fact that Jones has defaulted again post-confirmation, post-appeal, and has attempted to excuse Jones once again by a post-appeal finding that Southeast Bank failed, post-appeal, to file any proof-of-claim. However, as recently as September 15, 1989, the Eleventh Circuit in *In re Thomas*, 883 F.2d 991 (11th Cir.1989), held:

> Section 103 provides that chapter 5 of title 11 applies to chapter 13. Section 501 permits, but does not require, a creditor to file a proof of claim. In fact, "[a] proof of claim should be filed only when some purpose would be served." *In re Simmons*, 765 F.2d 547, 551 (5th Cir. 1985) (citing 3 COLLIER ON BANKRUPTCY ¶ 501.01; (15th ed. 1985)).

*Id.* at 996 (footnote omitted).

There not only would have been no purpose to be served by Southeast Bank's filing yet another proof-of-claim, but such a filing would have been entirely inconsistent with this appeal and may have even constituted a waiver of Southeast Bank's appeal. In any event, it would be ridiculous to expect Southeast Bank to file a claim for its regular monthly mortgage payment. The supplement to the record proves, albeit by hindsight, what was already obvious, namely, that the bankruptcy court stretched beyond the evidence to make the "necessary" findings to justify its decision.

*Conclusions of Law*

If Southeast Bank had simply appealed from the bankruptcy court's first purported modification of Jones' Chapter 13 plan, this case would be identical to *In re Hollis*. It is different, however, in that it now constitutes a so-called "Chapter 26" (13 + 13 = 26). *In re Saylors*, 869 F.2d 1434

**1012**

(11th Cir.1989), proved that a debtor can sometimes do indirectly what he cannot do directly, that is, if he can convince the bankruptcy judge to pronounce that he does it "in good faith." *In re Saylors* approved a so-called "Chapter 20," the device of following a Chapter 7 with a Chapter 13 as a good way to save the homeplace. After *In re Saylors*, the incidence of "Chapter 20's" in the three states comprising the Eleventh Circuit has risen perceptibly, and lawyers who regularly represent debtors with defaulted home mortgages in these three states, as contrasted, for instance, with Wisconsin (*Matter of Hagberg*, 92 B.R. 809 [Bankr.W.D.Wisc.1988]); Kentucky (*In re Binford*, 53 B.R. 307 [Bankr.W.D.Ky.1985]); Vermont (*In re McKinstry*, 56 B.R. 191 [Bankr.D.Vt. 1986]); Louisiana (*In re Beauty*, 42 B.R. 655 [E.D.La.1984]); California (*In re Reyes*, 59 B.R. 301 [Bankr.S.D.Cal.1986]); Arkansas (*In re Clark*, 86 B.R. 593 [Bankr. E.D.Ark.1988]); Illinois (*In re Schmick*, 87 B.R. 55 [Bankr.C.D.Ill.1988]); Ohio (*Matter of Fryer*, 47 B.R. 180 [Bankr.S.D.Ohio 1985]), and (*In re Brown*, 52 B.R. 6 [Bankr.S.D.Ohio 1985]); and Oklahoma (*In re Jacobs*, 102 B.R. 239 [Bankr.E.D.Okl. 1989]), may now be guilty of malpractice if they do not employ the "Chapter 20" device. Does this mean that Jones' lawyer, with overt or inadvertent help from the bankruptcy court, has stumbled onto a "Chapter 26" as the Alabama substitute for a "Chapter 20"? This court prefers to think not.

*In re Saylors* is readily distinguishable from Jones' case on several bases. First and foremost there is a substantial difference between the provisions and the philosophies of Chapter 7 and Chapter 13. Second, in *In re Saylors*, the Eleventh Circuit was not called upon to discuss a "Chapter 26", which is an animal as different from a "Chapter 20" as an elephant is from a giraffe. They both may be thought of as within the same genus, but they have distinct shapes and niches in the economic scheme and are therefore different species. In other words, when Jones first availed himself of bankruptcy relief in 1985, he may have chosen the wrong chapter of the Bankruptcy Code. *In re Saylors* had not been decided. A Chapter 7 filing would have set up the "Chapter 20" possibility.

There are two recent cases which shed light on the propriety *vel non* of the serial filing of Chapter 13 petitions. The first is *In re McKissie*, 103 B.R. 189 (Bankr.N.D. Ill.1989), referred to by this court in *In re Hollis*. The bankruptcy court there not only did not encourage the filing of a replacement Chapter 13 petition but dismissed an earlier Chapter 13 which had turned into an abysmal failure. That bankruptcy court dismissed the second case with prejudice under the instructions of 11 U.S.C. §§ 349(a) and 109(g)(2), awarded reasonable attorney's fees to the secured creditor which held a first mortgage on the debtor's property, and automatically wiped out the automatic stay. In an enlightening discussion of "Chapter 26", perfectly descriptive of Jones' case, the *McKissie* court said:

STRATEGIC USE OF SERIAL FILINGS

Bankruptcy courts are increasingly confronting the issue of good faith in serial cases. The main effect of serial filing is to achieve a continuing reimposition of the automatic stay, thereby delaying exercise of creditors' rights against their collateral. On occasion, serial filings attempt to circumvent the appeal process. Such repeat cases invariably increase the cost to creditors who hire counsel. Moreover, serial filings add an increased burden to the already congested calendars of many bankruptcy courts.

The Bankruptcy Code does not bar such filings, thus the filing of a second case or serial case is not per se bad faith. (citations omitted). The judicial response to serial filings varies. This variance probably results from a lack of definitive legislation as well as creative lawyering by counsel [or creative judging].

As a result, various combinations of recent cases show frequent use of the serial filing strategy. (examples omitted).

103 B.R. at 191.

The *McKissie* court expanded on the requirement of a finding of "good faith" and

the difficulty of applying the term "good faith" to differing situations inasmuch as the Bankruptcy Code fails to define the term. Without a precise definition, different courts go willy-nilly. The bankruptcy court there found that the debtor's second Chapter 13 case was not filed in good faith because "debtors have not produced any evidence that there has been a *bona fide* objective change in their circumstances since the filing and *dismissal* of the first Chapter 13 case to justify the filing of their serial case." 103 B.R. at 192 (emphasis supplied). This court notes that Jones' first Chapter 13 was *dismissed* before he filed his second. There is no indication whatsoever of any change in circumstances within the two-day period between the dismissal of Jones' first case and the filing of his second. Jones' second petition, under the *McKissie* reasoning, *could not have been filed in good faith.* The court concluded in *McKissie:*

> It is a misuse of the bankruptcy process to file one case, then, failing to achieve the intended goals, to refile a second case. *In re Jackson,* 91 B.R. 473 (Bankr.N.D.Ill.1988). Refiling the second case rather than taking an appeal in the first case circumvents the appeal process.

103 B.R. at 192.

Lastly, the *McKissie* court said:

> The undisputed facts and history of these cases by which the Debtors have attempted a failed and abusive "Chapter 26" show sufficient cause for the discretionary application of section 349(a) and a dismissal with prejudice for a period of one (1) year, other than the filing of a Chapter 7 case.

This court is in perfect agreement with the *McKissie* court's definition of "good faith" under these circumstances.

In dealing with Chapter 13 cases, a majority of the bankruptcy judges in the Northern District of Alabama, and in many other jurisdictions, routinely enter a "prospective" or so-called "drop-dead" order, which, by its terms, automatically lifts the automatic stay in the event a debtor subsequently fails to make a regular monthly residential mortgage payment as contractually provided. This reasonable accommodation to economic reality is totally inconsistent with what happened in Jones' case.

Another kind of "drop dead" order gives the debtor *advance warning* that serial filings will not be tolerated. This device was carefully explained in *In re Abdul–Hasan,* 104 B.R. 263 (Bankr.C.D.Cal.1989). That court very appropriately said:

> There is nothing so sacrosanct about the automatic stay that it should not be subject to the *res judicata* effect given to other types of litigation.
>
> The purposes stated above are particularly compelling in this type of case because the automatic stay is "automatic." It requires no showing by the debtor, but is invoked by the mere filing of a piece of paper and the payment of a $90.00 fee. *Many debtors have used and abused this* (as has the debtor in this particular case). *The frustration of parties in dealing with the multiple filing case has been demonstrated over and over again and is the subject of much judicial comment.* This Court specifically dealt with that issue in the case of *In re Kinney,* 51 B.R. 840 (B.C.D.Cal.1985). There is no way available to the Court to prevent multiple filings and their detrimental effect on creditors who have previously fully and fairly litigated the automatic stay issues. *The "prospective order" does not interfere with the right of the debtor to file a bankruptcy, but does protect the creditor from multiple delays and removes the incentive of the debtor to act in an abusive manner.*

104 B.R. at 267 (emphasis supplied).

\* \* \* \* \* \*

This Court believes that it is the intent of Congress that all the presumptions be on the side of the debtor at the time of the filing of a first bankruptcy. The automatic stay comes into being without the debtor taking any action to prove that she is entitled to it. When the creditor does seek relief from the stay, courts are reluctant to grant it to them until it becomes clear that the creditor is suffering detriment and that the debtor has not

**1014**

been able to provide adequate protection. Once this occurs, then relief from stay is granted. *If the debtor chooses to allow the bankruptcy to be dismissed and then refiles, she cannot start afresh as though there had never been a prior determination. She only gets one presumption, not a series of new ones at the cost of $90.00 each.*

104 B.R. at 268 (emphasis supplied).

The *Abdul–Hasan* court is in obvious agreement with the *McKissie* court. This court agrees with both.

The Bankruptcy Code, in its Chapter 13, provides:

(g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(1) The case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or

(2) The debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. § 109(g) (Supp.1989).

Jones did not wait 180 days. He waited only long enough for his lawyer to fill out a new petition. He claims, of course, that he comes within one of the exceptions to the 180–day waiting period, as the bankruptcy court purportedly found. The record in Jones' earlier Case No. 85–08280 clearly demonstrates that Jones repeatedly failed to abide by the terms of his plan in its various manifestations, and with the solemn orders of the bankruptcy court. The patience of the creditor was exhausted, if not the patience of the Trustee and of the judge. When, in total frustration, Southeast Bank filed its last motion for relief from stay in Case No. 85–08280, and the court reacted as it did, that reaction may have constituted an act of judicial compassion but it also constituted the functional equivalent either of a "dismissal for willful

failure to abide by orders of the court," or of a "voluntary dismissal by the debtor," or both. When the bankruptcy court dismissed Case No. 85–08280 on January 30, 1989, it formally stated as its only reason "that debtor has failed to comply with the terms of his extension proposal as confirmed by this Court." The mere absence of the word "willful" does not mean that the bankruptcy court adjudicated that Jones' "failure to comply" was *not* "willful." The opposite is necessarily implied. Otherwise, the bankruptcy court surely would have done what it had already done several times before, namely, denied relief from the stay and allowed another amended plan. Judicial intent may be logically deduced from the facts and the formal findings which existed prior to an appeal. They cannot simply be gainsaid or "wished away" by the bankruptcy court post-appeal. Therefore, the words dismissing Case No. 85–08280 constitute the law-of-the-case. They established the fact of Jones' "willful failure to abide by order of the court" despite the post-appeal opinion by the bankruptcy court, which, in effect, attempted to overrule itself. This court hopes that the bankruptcy court here did not intend to issue an invitation to Jones to circumvent the public policy represented by 11 U.S.C. § 109(g).

An argument can be made, of course, that a "willful failure to comply" can *never* take place if a debtor lacks the funds with which to comply. Jones belatedly makes this argument. If such is to become the invariable exception to "willful failure," then there will rarely, if ever, be a "willful failure" in certain bankruptcy courts, because all Chapter 13 debtors seem to be impecunious. When this bankruptcy court approved different plans in Jones' first Chapter 13, each time increasing his monthly obligation to Southeast Bank, that court was adjudicating that Jones was able to perform, and that Southeast Bank was "adequately protected." It is to beg the question after four years to permit the Trustee simply and suddenly to say that the current plan was "not feasible" and for the court thereupon to forgive all of Jones' prior

failures, and then post-appeal to say that those failures were not "willful." If a plan is "not feasible" on one day, how can a virtually identical plan become "feasible" and provide "adequate protection" two days later?

Under the Bankruptcy Code, the court must lift the stay if "cause" exists, "including the lack of adequate protection." 11 U.S.C. § 362(d)(1) (supp. 1989). It is impossible to rationalize or to reconcile the dismissal of the Chapter 13 bankruptcy case because the plan was "not feasible," and because the debtor had failed, time and again, to comply with that plan, with a finding two days later that a second very similar Chapter 13 plan was "feasible" and provided "adequate protection" to the secured creditor.

*Conclusion*

■ Employing the "clearly erroneous" standard in order to review the bankruptcy court's findings of fact under the "substantial evidence" test of *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969), and reviewing purely legal questions on a *"de novo"* standard, this court concludes that the bankruptcy court here erred by confirming Jones' plan in a serially filed Chapter 13 under this particular set of undisputed background facts. While the discretion of a bankruptcy court is, as it should be, broad, the bankruptcy court is constrained by certain statutory principles and cannot act as an advocate for the debtor any more than for the creditor. The better-reasoned cases do not permit what was done here, and there is nothing in any opinion yet handed down by the Eleventh Circuit which could have encouraged the bankruptcy court to believe that it had found a way around the probable appellate result in *In re Hollis*. Although there may be no absolute prohibition against *all* serial Chapter 13 filings, the "Chapter 26" practice is not one which should be encouraged, as it would be if the bankruptcy court were affirmed in this case. It is not any rigid rule but the unique combination of circumstances here which made it error for the bankruptcy court to allow a serial filing two days after a dismissal with the findings

which accompanied it, and made it a compounding error thereafter to deny Southeast Bank relief from the stay. The effort by the bankruptcy court to put the horse back in the barn after Southeast Bank's appeal by entering findings and conclusions inconsistent with the overwhelming evidence and with that court's own prior holdings, and based on facts not in evidence, was unavailing.

An appropriate, separate order will be entered, vacating the order entered by the bankruptcy court in Case No. 89–00211.