**In re Gilbert G. HUERTA and Yvonne M. Huerta, Debtors.**

**Bankruptcy No. SBX 91–21231 LR.**

United States Bankruptcy Court, C.D. California.

Feb. 28, 1992.

---

Robert R. Winterbotham, Riverside, Cal., for debtor.

Edward G. Schloss, Los Angeles, Cal., for objecting creditor.

## MEMORANDUM OF DECISION DENYING CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN AND DISMISSING DEBTORS' CASE WITH PREJUDICE

LYNNE RIDDLE, Bankruptcy Judge.

The hearing on confirmation of the proposed Chapter 13 Plan of Gilbert G. Huerta and Yvonne M. Huerta (hereinafter "Debtors") came on regularly on November 25, 1991, before the undersigned United States Bankruptcy Judge. Robert G. Winterbotham, Esq. appeared for Debtors; Steven Lawrence, Esq. appeared for Chapter 13 Trustee, Shannon J. Haney (hereinafter "Trustee"); and, Franklin C. Adams, Esq. appeared specially for Edward G. Schloss, Esq., counsel for objecting creditor, Goldome Realty Credit Corporation (hereinafter "Goldome"). The hearing was continued to December 16, 1991, to provide the Debtors an opportunity to respond to Goldome's objection to confirmation of the plan.

## BRIEF SUMMARY OF ARGUMENTS

Goldome holds a promissory note secured by a first deed of trust on the Huerta residence; the obligation is in default. Debtors' present Chapter 13 was filed only two months after the dismissal of their prior case, also filed under Chapter 13. At the time of dismissal the Goldome note was two months in arrears (a sum of approximately $1,800).

Goldome averred that confirmation should be denied because neither the case nor the plan was filed in good faith. It argued that since Debtors' first case had been dismissed so recently, and since Debtors had not made monthly mortgage payments during the two month interim period between filings, and since an "adequate protection" order had been entered to protect Goldome in the prior case, then Debtors must, as a condition precedent to confirmation,[1] tender payment for the "prepetition" months of August 1991 and September 1991 *and* for the "post-petition" months of October 1991 and November 1991. As an alternative, Goldome argued that Debtors' conduct in re-filing after only two months and without remaining current on their mortgage payments, was evidence of Debtors' bad faith, and therefore not only should confirmation be denied, but

---

1. *See* Local Bankruptcy Rule 180 ¶ 23.

their case must be dismissed with a bar to their refiling for a period of 180 days.

At the initial confirmation hearing on November 25th, Debtors orally responded that with respect to their mortgage payments, the only condition precedent to confirmation of the plan was that they be "post-petition current" from the date of the present case filing, i.e., that they be current for the months of October 1991 and November 1991.

On December 16th, at the continued hearing, Debtors' attorney claimed, without dispute, that Debtors had tendered approximately $2,700 to Goldome for the months of October, November and December 1991, and were therefore "post-petition" current. On that basis, counsel argued, their plan should be confirmed. However, Debtors filed no written response to Goldome's objection, and more particularly, they failed to file any points and authorities and declaration regarding the "post-petition" payment dispute and the "bad faith" allegations made by Goldome.

For its part, Goldome, appearing at the continued hearing by its attorney Brenda J. Logan, Esq., acknowledged the tender of the $2,700. She argued, however, that these payments to Goldome must be applied to the months of August, September (the "interim" months) and October 1991 (the first "post-petition" month)—leaving Debtors in post-petition default for November and December 1991. As evidence of Debtors' bad faith, Attorney Logan referenced and reiterated the facts set forth in Goldome's objection: (1) that there had been an adequate protection order in favor of Goldome in the prior case which would lift the automatic stay unless Debtors made timely monthly mortgage payments; (2) that notwithstanding the adequate protection order in the prior case, Debtors were in default twice during the case, requiring Goldome to file declarations with the Court on two different occasions seeking relief under the adequate protection agreement, thus incurring additional attorney fee expense; (3) that Debtors' prior case was dismissed by motion of the Trustee for Debtors' failure to make Trustee payments; and (4) that Debtors had not made regular monthly mortgage payments between the dismissal of the first case and the filing of the second. As to evidence, therefore, the Court had before it only the two Huerta case files and that presented by Goldome, without objection or refutation by Debtors.

## BRIEF CONCLUSION

Following argument of counsel, a review of the files in the two cases, and a recitation on the record of the applicable law, the Court found that Debtors failed to sustain their burden of proof that their second petition and plan was filed in good faith. On that basis, the Court concluded that the second filing was made in bad faith and for an improper purpose. Therefore, Goldome's objection was sustained, confirmation of Debtors' proposed plan was denied, and the case was dismissed with prejudice as to the listed obligations, and Debtors were enjoined for refiling for a period of 180 days.

The Court has taken the time to write this opinion to clarify the burdens a debtor takes on when he or she files successive Chapter 13 cases. Successive filings are clearly not proscribed *per se*, but I am persuaded, along with others of the Bankruptcy Court, that a second filing, within a short period following a dismissal, must be viewed as being in a different procedural posture than the first, and one in which debtor has to take the initiative to demonstrate the *bona fides* of the second filing. It is my hope that this opinion will assist the understanding of debtors and their attorneys of the requirements and the process.

## BACKGROUND FACTS

1. FIRST FILING

Debtors filed a voluntary petition under Chapter 13 of Title 11, U.S.C. on July 3, 1990; the case was assigned case number SBX 90–05639 LR (hereinafter "First case"). In their papers, Debtors stated that they were both employed; Mr. Huerta as a grocery clerk at Boys Market where

he had been employed for the past 13 years; Mrs. Huerta by Sherson, Lehman Mortgage as a loan counselor for the past four months. Debtors are the parents of three small children, who at the time were ages 5 years, 2½ years and 9 months. Debtors' combined monthly take-home pay was $3,154 (husband $2,025; wife $1,129); their total monthly expenses were $2,357. This left them with monthly disposable income in the sum of $797.

Among their monthly expenses, Debtors listed the following: $600 for food; $150 for clothing; $50 for recreation; and, $122 for cable TV, home repairs and auto repairs. Nine days after filing their petition and Statement, which the Court notes were both signed under penalty of perjury, Debtors filed an amendment to their budget, also signed under penalty of perjury, which made the following changes: clothing from $150 to –0–; home and auto repairs from $100 to –0–; and added child care at $300 per month. There was no explanation of these changes—but despite the changes, Debtors stated, erroneously, that their disposable income remained the same amount—$797 (figure should have been $747).

Among Debtors' secured debts were the following: Standard Federal (Goldome), $88,000 on a note secured by a first trust deed; American General Finance, $9,300 on a 1983 Toyota automobile (listed as $1,200 secured, $8,100 unsecured); two jewelers, $256 on jewelry; Levitz, $850 for furniture; and, Ford Motor Credit, $16,000 on a van vehicle (listed as $8,875 secured, $7,125 unsecured). The total general unsecured debt was listed at $17,296; the debts appear to be for general merchandise credit card purchases.

Finally, in their Chapter 13 Statement Debtors said they own a home valued at $122,000 and encumbered in the sum of $88,825 (to Goldome), and they admitted an arrearage in their monthly mortgage payments to Goldome in the sum of $4,714.

Debtors' plan, proposing to pay $797 per month for 56 months and yielding 70% to general unsecured creditors, was confirmed by Court order entered on August 22, 1990.

On December 12, 1990, Trustee Haney filed a motion to dismiss Debtors' case alleging that they were in default on plan payments in a sum of $1,991; Trustee gave them to December 31, 1990 to bring their payments current. Apparently the payments were never made—but, on January 28, 1991, the Debtors, on the grounds that they had incurred unexpected automobile expenses, filed an application to suspend the November and December 1990 and January 1991 payments. The application was approved by the Trustee. The Court signed an order approving the suspension and allowing the three payments to be paid by extending the plan three months.

On December 19, 1990, Goldome filed a motion for relief from stay to foreclose on Debtors' residence based on allegations that the November and December 1990 payments in the sum of $1,800 had not been made. Pursuant to that motion, on January 24, 1991, a stipulated order for adequate protection was entered wherein the Debtors agreed, among other things, that they would (1) make their payments to Goldome in a timely manner, (2) pay their December 1990 payment ½ in January and ½ in February, (3) pay $560 in attorney's fees to Goldome at $50 per month beginning in March 1991, and (4) in the event of default, Debtors would be given a written notice and 10 days to cure, and if cure was not made the automatic stay would be lifted without further order of the Court.

Thereafter, on March 4, 1991, the Trustee again filed a motion to dismiss Debtors' case for their failure to make plan payments. The declaration in support of the motion stated that Debtors were $2,188 in arrears, and gave Debtors to March 21, 1991 to bring the account current.

Moreover, on March 4, 1991, Goldome filed with the Court a declaration RE: breach of the adequate protection order, alleging that Debtors had failed to make the January and February 1991 mortgage payments, late charges and attorney fee payments. The declaration was rescinded by Goldome on March 25, 1991. However, on July 12, 1991, Goldome again filed a

declaration RE: breach of the adequate protection order, this time alleging that monthly payments for April, May, June and July 1991 had not been paid, and further, that the attorney's fee payments for March through July 1991 had not been made.

On July 25, 1991, the Trustee filed with the Court a declaration and proposed order dismissing Debtors' case. The declaration alleged that Debtors had made no plan payment since *January 1991*, and were $4,579 in arrears (6 months). No opposition was received to the motion to dismiss nor did the Debtors file any objection to the Trustee's declaration. On August 1, 1991, Debtors' case was dismissed.

The Trustee's final report and account to the Court shows that during the 12–month course of the case, the Debtors paid to the Trustee a total of $1,797.88 (of the approximately $9,564 due); that a total of $999.30 was paid to secured creditors, $740 was paid to Debtors' attorney, and $186 was paid for case administration. No moneys were paid to any general unsecured creditor.

### 2. SECOND FILING.

Debtors filed their second voluntary petition under Chapter 13 on September 30, 1991; the case was assigned case number SBX 91–21231 LR (hereinafter "Second case"). In their papers, Debtors again stated that they were employed; Mr. Huerta still by Boys Market; Mrs. Huerta now by Dairy Fresh, as a data entry clerk, where she had worked for the past three weeks. Debtors again listed their three small children as dependents. Their combined monthly take-home income in this filing was listed as $2,750 (husband $1,800 [ostensibly from Boys Market, and $150 for "part-time work"]; wife $800); their total monthly expenses were stated as $2,125—leaving monthly disposable income in the sum of $625. There was no explanation as to why Mr. Huerta's income had decreased from the prior filing.

Their reported monthly expenses changed from the prior filing as follows: Food expense was decreased from $600 to $350; utilities decreased from $210 to $187;

clothing was reduced from $150 to $100; the $50 listed for recreation in the First case was eliminated in the Second; transportation increased from $187 to $300 per month; and, the child care expense of $300 in the First case was eliminated from the Second. There was no explanation for these changes.

Listed among Debtors' secured debts were the following: Standard Federal (Goldome), $87,000; American General Finance, $9,272 ($28 less than the amount stated 14 months earlier) on the Toyota car (listed as $1,200 secured, $8,072 unsecured); the same two jewelers, $266 on jewelry ($10 more than in the prior filing); and, Levitz, $957 for furniture ($107 more than in the prior case). The Ford van previously listed was reported as repossessed by Ford Motor Credit, leaving a general unsecured deficiency balance to Ford of $10,200. And finally, in this case Debtors added a new secured obligation to Sears in the sum of $1,331 due for a washer and dryer. It is not clear when the washer and dryer were purchased, but if Debtors made the purchase during the pendency of the First case, they likely violated the terms of their plan because it forbade incurring any new debt in excess of $100 without Trustee consent. There is no evidence in the file that such consent was obtained.

Debtors listed a new tax obligation to the Franchise Tax Board for $1,130. The total general unsecured debt in the Second case was listed as $26,965. The general unsecured creditors in the Second case are the same as those listed in the First, except for the addition in the Second of Ford Motor Credit and the elimination in the Second of an obligation to Sears in the sum of $1,293 for "Misc. Purchases."

Finally, in their Chapter 13 Statement Debtors stated that they owned a home valued at $130,000 which was encumbered in the sum of $91,754. They admitted an arrearage in their monthly mortgage payments to Goldome in the sum of $4,754 ($14 more than listed in the prior petition. Had Debtors made their plan payment to the Trustee during the 14 months their First case was open, the arrearage to Goldome

would have been reduced by approximately $3,262, and the arrearage at the filing of the Second would have been $1,492).

Debtors' Second case plan proposed to pay the Trustee $625 per month for 56 months; this would yield 70% to general unsecured creditors.

[It is important to note at this point that approval of Debtors' Second proposed plan meant that the general unsecured creditors, who received nothing under the First case, would not be satisfied under the Second plan for a period of approximately 70 months from the filing of the First case. It is also interesting that Debtors apparently failed to list in their Second case the unpaid balance due to their bankruptcy attorney in the First case of $127.42.]

## DISCUSSION

### STATUTORY AND PROCEDURAL REQUIREMENTS APPLICABLE TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN

*Bankruptcy Code § 1322, Title 11 U.S.C. § 1322.*

"CONTENTS OF PLAN

(a) The plan shall—

(b) ....

(c) The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years."

*Bankruptcy Code § 1324, Title 11 U.S.C. § 1324.*

"CONFIRMATION HEARING.

After notice, the court shall hold a hearing on confirmation of the plan. A party in interest may object to confirmation of the plan."

*Bankruptcy Code § 1325, Title 11 U.S.C. § 1325.*

"CONFIRMATION OF PLAN.

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(2) ...;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

....

(6) the debtor will be able to make all payments under the plan and to comply with the plan."

*Local Bankruptcy Rule 180 (aka General Order 1) ¶ 3.*

"To the extent that this order conflicts with the provisions of Local Rules, the provisions of this order shall prevail. In all other respects, the Local Rules shall apply in all Chapter 13 cases."

*Local Bankruptcy Rule 180 (aka General Order 1) ¶ 16.*

"Objections to Plans.

Objections, if any, to the confirmation of the plan shall be in writing, supported by declaration or other admissible evidence, filed with the Court and served on debtor's attorney, the debtor, and the Chapter 13 Trustee.... Any objection may be deemed waived unless the objection is timely filed and served, and the objector appears at the confirmation hearing."

*Local Bankruptcy Rule 180 (aka General Order 1) ¶ 23.*

"Payments on Mortgages ...

Failure to make all post-petition mortgage payments will generally result in dismissal of the case at the confirmation hearing. Such payments ... shall commence with the next payment due after the date the petition is filed."

*Local Bankruptcy Rule 101(4)(s).*

"Definitions.

. . . . .

(s) 'Motion' includes all motions, applications, or other requests made for judicial action except by complaint, counterclaim or cross-claim;"

*Local Bankruptcy Rule 111.*

"General Requirements.

(a) *Applicability.* The provisions of this rule shall apply to motions, orders to show cause, and all other proceedings

except a trial on the merits unless otherwise ordered by the Court....

....

(g) *Response to Motions.* Unless the Court orders otherwise, each interested party responding to the motion shall, not later than 11 days prior to the hearing date, serve ... and file ... (i) a brief, but complete written statement of all reasons in opposition thereto ... and [sic] answering memorandum of points and authorities, declarations and copies of all ... documentary evidence on which the responding party intends to rely....

(j) *Failure to File Required Papers.* Papers not timely filed and served may be deemed by the Court to be consent to the granting or denial of the motion, as the case may be.

(k) *Evidence on Motions.* Factual contentions involved in any motion or opposition to a motion shall be presented, heard, and determined solely upon declarations and other written evidence.... When the Court intends to take [oral] testimony, it will give the parties two Court days notice of its intention...."

## THE BURDEN OF PROOF IS ON DEBTORS TO SHOW THEY HAVE SATISFIED ALL REQUIREMENTS FOR CONFIRMATION UNDER 11 U.S.C. § 1325

■ Debtors have requested the Court make an order confirming their proposed Chapter 13 plan. Goldome objects. Who has the burden of proof on the issue? In *In re Wolff,* 22 B.R. 510 (9th Cir.BAP 1982), creditor filed objections to confirmation of debtor's plan on the grounds that it impermissibly classified two unsecured creditors, and that it was not in the best interest of creditors. The trial court, holding that the burden of proof was on the objecting creditor, overruled the objections and confirmed the plan. Creditor appealed. The Appellate Panel reversed, and held, among other things that

"It is well established that the burden of proof rests on the party who asserts the affirmative of an issue. A plaintiff has the burden of making out his case in order to warrant relief.

Similarly, the proponent of a Chapter 13 plan has the burden of proof as to its confirmation."

*Id.* at 512 (citations omitted); *and see In re Warner,* 115 B.R. 233, 236 (Bankr.C.D.Cal. 1989).

Even more specifically, the 9th Circuit BAP has held that it is debtor who has the burden of establishing his or her good faith under § 1325(a)(3). *In re Warren,* 89 B.R. 87, 93 (9th Cir.BAP 1988).

## WHERE AN OBJECTION TO DEBTORS' PLAN IS BASED ON LACK OF "GOOD FAITH", DEBTORS MUST PRESENT SOME EVIDENCE IN SUPPORT OF THEIR CLAIMS OF GOOD FAITH

■ The Ninth Circuit BAP in *Warren* further held that while under Fed. R.Bankr.P. 3020(b)(2) the trial court may, where no objection to confirmation has been made, find the plan filed in good faith, "Where there is an objection, *more* than bare presentation of the plan and provision for payment thereunder is requisite." *In re Warren,* 89 B.R. 87, 91 (9th Cir.BAP 1988) (emphasis added). Under Rule 111 of the Local Bankruptcy Rules of Central District of California (hereinafter "Local Rules"), as set forth above, the "more" requirement of *Warren* means that where an objection is filed, debtors must bear their burden of proof by presenting admissible evidence to the Court by way of timely filed declarations and documentation.

In *In re Jackson,* 108 B.R. 251 (Bankr. E.D.Cal.1989), debtors received a Chapter 7 discharge, but their case was still open at the time they filed a Chapter 13 petition (filed approximately one month after discharge was entered and two weeks after their mortgagee received an order for relief from stay to foreclose). On the Court's own motion, the Chapter 13 was dismissed as a bad faith filing. Applying *In re Metz,* 820 F.2d 1495 (9th Cir.1987), discussed below, the Court noted that even though a comparison of the budgets filed in the two

cases demonstrated an increase in disposable income, the debtor had failed to bear his burden with respect to the good faith requirement: "There is no evidence before the court which would show any changed circumstances to justify their [successive] filing...." *Jackson*, 108 B.R. at 253.

## THE COURT HAS AN INDEPENDENT DUTY TO DETERMINE WHETHER DEBTORS ARE PROCEEDING IN GOOD FAITH

■ The court has an independent duty to make a "considered assessment" of the debtor's good faith. *In re Warren*, 89 B.R. 87, 90 (9th Cir.BAP 1988) (citing *In re Goeb*, 675 F.2d 1386, 1390 (9th Cir.1982)). *See also In re Harris*, 132 B.R. 166, 170 (Bankr.S.D.Iowa 1991) (citing *In re Rimgale*, 669 F.2d 426, 431 (7th Cir.1982)); *In re Chaffin*, 836 F.2d 215, 216 (5th Cir. 1988).

Even if all the creditors of a proposed plan accept it, and even where no creditor opposes confirmation, the Court still has an independent duty to determine debtor's good faith. *Warren*, 89 B.R. at 90. "The good faith requirement is one of the central, perhaps the most important confirmation finding to be made by the court in any Chapter 13 case. Each case must be judged on its own facts." *In re Kull*, 12 B.R. 654, 658 (S.D.Ga.1981) (cited with approval in *Warren*, 89 B.R. at 90). Under the requirements of § 1325(b)(1)(B), "[t]he court should conduct more than a ministerial review related to payments in order that it may make an informed and independent judgment concerning whether a plan was proposed in good faith." *Warren*, 89 B.R. at 95.

## HOW IS "GOOD FAITH" DETERMINED IN CHAPTER 13?

■ While the meaning of "good faith" as used in § 1325(a)(3) is neither defined by statute nor explained by legislative history, it has been discussed at length in reported cases. At its most fundamental, an inquiry to determine good faith "... should examine the intentions of the debtor and the legal effect of the confirmation of a Chapter 13 plan in light of the spirit and purposes of Chapter 13." *In re Warren*, 89 B.R. 87, 93 (9th Cir. BAP 1988) (quoting *In re Chinichian*, 784 F.2d 1440, 1444 (9th Cir.1986)). Or, as set forth in *In re Goeb*, 675 F.2d 1386 (9th Cir.1982), to determine good faith the initial question should be whether the debtor acted equitably in proposing his or her Chapter 13 plan. Additionally, said the Court, "[The] bankruptcy court must inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner." *Id.* at 1390. Or, as stated in a slightly different way: "The bankruptcy court must look at factors such as whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code." *Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir.1987).

The search for "good faith" under *In re Estus*, 695 F.2d 311, 316 (8th Cir.1982), cited with approval in *Warren*, focuses on the question of "whether the plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13." This requires an examination into the totality of circumstances. The "totality of circumstances" inquiry was aided by the *Estus* court's listing of numerous factors it considered relevant to this analysis. The *Estus* "factors" include:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy [law];

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.

*Estus,* 695 F.2d at 317.

■ The "good faith" factors to be reviewed in making a determination under § 1325(a)(3) for purposes of confirmation of a plan are the same as those used in making an analysis under § 1307(c) to determine facts sufficient to dismiss a case where the alleged basis is lack of good faith in the filing of the petition. *In re Smith,* 848 F.2d 813 (7th Cir.1988).

## CAN THERE BE "GOOD FAITH" IN SERIAL OR SUCCESSIVE FILINGS?

■ Initially, we have located no published case that defines the terms "serial" or "successive" as they apply to bankruptcy filings. This Court reads those terms to have the general meaning they do in ordinary usage, i.e. 'successive' means following in order, one after another, as in a series, and 'series' means a number of things and events of the same class coming one after another in temporal succession, *Webster's Ninth New Collegiate Dictionary* 1074, 1178 (1987), and rejects Debtors' argument here that 'serial' and 'successive' mean "many." On that basis, this Court holds that case law respecting serial

filings is applicable here where Debtors have, so far, filed but two cases one after the other, which are close enough in time [2] and of the same class [3] to be a "series."

■ Are serial filings prohibited? No. There is no *per se* rule against serial bankruptcy filings. "Although recognizing that, when examined together, successive filings may be evidence of bad faith," said the Court in *In re Taylor,* 884 F.2d 478, 485 (9th Cir.1989), "... we recently held that 'Multiple Chapter 13 bankruptcy filings are legally justified "as long as each new plan is proposed in good faith." ' *In re Chisum,* 847 F.2d at 599 (citing *Nash,* 765 F.2d at 1415)." [Here too, it is of interest to note that "multiple" is commonly defined as "more than one." *Webster's Ninth New Collegiate Dictionary* 779 (1987)].

■ Evidence with respect to a debtor's past history of bankruptcy filings and dismissals is relevant to the determination of whether a present plan has been proposed in good faith. *In re Nash,* 765 F.2d 1410, 1415 (9th Cir.1985). What's more, an examination as to whether serial filings should be permitted always raises the question of good faith. The bankruptcy court must be constantly vigilant to determine whether there was a strategy behind the subsequent filing to frustrate statutory requirements and abuse the bankruptcy process. *In re Schuldies,* 122 B.R. 100, 102 (D.S.D.1990) (citing *In re Chisum,* 847 F.2d 597, 600 (9th Cir.1988)). As the Court held in *In re McGrue,* 108 B.R. 592 (Bankr. N.D.Ohio 1989),

... [the] court is required to assess not only the chapter 13 case before it but other actions and events comprising the totality of relevant circumstances relating to the debtor and the case to decide whether the debtor is seeking to manipulate the broad remedial provisions of

---

**2.** As discussed in Page 377 n. 6, many Bankruptcy Judges of the Central District of California use a period of six months as a guideline. This period is consistent with the 180–day eligibility requirement under 11 U.S.C. § 109(g).

**3.** Here I believe the "same class" issue is resolved by determining whether the listed debts and creditors are the same, or nearly the same, in the second and first cases.

chapter 13 in ways which pervert or distort the intent of those provisions.

*Id.* at 595 (citations omitted).

While recognizing that there is no one set of good faith factors to review in determining whether a successive case has been filed in bad faith, the District Court acting on appeal in *In re Schuldies,* 122 B.R. 100, 103 (D.S.D.1990), suggested the following as a non-exclusive list of considerations:

(1) the time between the prior case and the present one;

(2) whether the second case was filed to obtain the favorable treatment afforded by the automatic stay;

(3) the effort made to comply with the prior case plan;

(4) the fact that Congress intended the debtor to achieve its goals in a single case; and,

(5) any other facts the court finds relevant.

## IN THE CONTEXT OF SUCCESSIVE FILINGS, "GOOD FAITH" REQUIRES EVIDENCE OF POSITIVE CHANGED CIRCUMSTANCES

■■■■ While it is true that successive filings don't equate to bad faith *per se,* "successive filings may be examined together and the result achieved by such filings reviewed against the statutory requirements." *In re Metz,* 820 F.2d 1495, 1497 (9th Cir.1987). In *Metz,* debtor, immediately upon receiving a Chapter 7 discharge, without distribution to creditors, filed two successive Chapter 13 petitions. The first was dismissed without prejudice to refiling, apparently because the plan was not confirmable. Debtor's second Chapter 13 case was filed to prevent foreclosure. The foreclosing lender objected to confirmation of debtor's plan on several grounds, including that the successive filings constituted bad faith *per se* and the plan was not filed in good faith. In concluding that debtor had proposed his Chapter 13 plan in good faith, the Court of Appeals found the following facts to be persuasive evidence of good faith:

1. Debtor kept current on his post-petition mortgage payments; and

2. His salary had increased, thus permitting him to propose a cure of arrearages within 36 months.

Based on such facts, the *Metz* court said, "Such a bona fide change in circumstances is precisely what the bankruptcy judge should examine to determine whether successive *filings* are proper." *Id.* at 1498 (emphasis added).

The importance of the concept of "changed circumstances" was later underscored by the Ninth Circuit in *In re Chisum,* 847 F.2d 597, 600 (9th Cir.), *cert. denied,* 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988), when it said

The primary basis for the bankruptcy court's good faith determination in this case was its finding of changed circumstances. We have earlier explicitly stated that "a bona fide change in circumstances" can justify a finding that successive bankruptcy filings were proper. *Matter of Metz,* 820 F.2d at 1498. The bankruptcy judge is in the best position to assess a debtor's credibility and the legitimacy of the explanations he gives for multiple filings.

From the reported cases, it appears to this Court that the kind of "changed circumstances" required to justify a successive filing must be positive changes, i.e., debtor's objective, financial circumstances and ability to perform the plan proposed must have improved between dismissal of the prior case and commencement of the new case. *See In re McKissie,* 103 B.R. 189, 192 (Bankr.N.D.Ill.1989); *In re Abdul–Hasan,* 104 B.R. 263, 267 (Bankr. C.D.Cal.1989); *In re Vita,* 82 B.R. 244, 245 (Bankr.S.D.N.Y.1988); *In re Asbridge,* 66 B.R. 894, 896 (Bankr.D.N.D.1986); *In re Asbridge,* 61 B.R. 97, 102 (Bankr.D.N.D. 1986); *In re Jefferson,* 59 B.R. 707, 710 (Bankr.S.D.Miss.1986). Negative changes occurring to debtors under a confirmed plan, as we discuss below, should be raised and considered by the Court pursuant to debtor's motion to suspend or modify the plan. Negative changes do not give debtor a right to allow the case to be dismissed

and shortly thereafter refile as though no breach of the plan had occurred.

When the debtor, who has the burden of proof, has not made sufficient showing of "changed circumstances" the Bankruptcy Court may reasonably infer that the successively filed case or cases were commenced solely to prevent or delay foreclosure. *In re McKissie*, 103 B.R. 189, 192 (Bankr.N.D.Ill.1989).

And, of course, when a bankruptcy case is filed, even a first case, only to prevent or forestall foreclosure *and* without the intention of financial rehabilitation, the case should be dismissed as having been filed in bad faith. *McKissie*, 103 B.R. at 192 (citing *In re Wentworth*, 83 B.R. 705 (Bankr.D.N.D.1988); *In re Lunsford*, 39 B.R. 490 (Bankr.N.D.Ga.1984), and *In re Crestwell*, 30 B.R. 619 (Bankr.D.Colo. 1983)). *And see In re Russo*, 94 B.R. 127 (Bankr.N.D.Ill.1988).

Judge Squires in *McKissie*, in this Court's view, drew a conclusion which is not only correct, but its enforcement mandatory, if bankruptcy courts, at least in the Central District of California, are going to stem the tide of ever-increasing abuse. Judge Squires said

It is a misuse of the bankruptcy process to file one case, then, failing to achieve the intended goals, to refile a second case. *In re Jackson*, 91 B.R. 473 (Bankr. N.D.Ill.1988). Refiling the second case rather than taking an appeal in the first case circumvents the appeal process. *In re Beswick*, 98 B.R. 900, 904 (Bankr. N.D.Ill.1989). In the case at bar, the imposition of the automatic stay was obtained against [the mortgage holder] upon refiling the second case. Debtors made no attempt to perfect an appeal of the properly dismissed first case, nor timely file any amended plan, nor show any objective change in circumstances justifying the filing of the second case

which they have since voluntarily dismissed.

*McKissie*, 103 B.R. at 192.

Other courts have suggested that when a debtor who, under a confirmed Chapter 13 plan, has been unable or unwilling to meet a plan payment obligation to the trustee or a mortgagee, suffers a dismissal and shortly thereafter refiles—then dismissal of the subsequent case is proper if the debtor failed to come forward in the prior case and move for relief from the obligations under the prior plan. The theory here is that if debtor suffered a detrimental change of circumstances during the first case which created an inability to make plan payments, it is debtor's burden to move for relief or modification pursuant to § 1329, or for voluntary dismissal, rather than simply breach the plan obligation and put the Trustee or creditors to the delay and expense of moving for dismissal, and thereafter endure the added expense of bringing yet another motion for relief or dismissal in the newly filed case. As the Court in *In re Bolton*, 43 B.R. 48, 50 (Bankr.E.D.N.Y.1984),[4] said,

Under the doctrine enunciated in *Johnson*, the court holds that a debtor who files a subsequent petition after a prior petition is dismissed must not only demonstrate a "change in circumstances" but must also show good cause why he ignored applicable statutory provisions in failing to move for relief from the obligations under the prior plan in the prior proceeding.

FILING MERELY TO PREVENT FORECLOSURE IS BAD FAITH, AND ONLY IN EXTRAORDINARY CIRCUMSTANCES SHOULD DEBTORS BE PERMITTED TO OBTAIN THE BENEFITS OF A SECOND AUTOMATIC STAY TO PREVENT FORECLOSURE

"Filing a bankruptcy petition to prevent foreclosure if undertaken pursuant

---

**4.** *Bolton* cites *In re Johnson*, 708 F.2d 865, 868 (2nd Cir.1983), for the proposition that in examining debtor's *bona fides* of a subsequently filed case, i.e., in determining "changed circumstances," the court might well inquire into whether debtor made any attempt to move for

modification or suspension of plan payments pursuant to § 1329. *See also In re White*, 72 B.R. 169, 170 (Bankr.D.S.C.1986)(debtors must demonstrate good cause why they failed to move for relief from plan obligations).

to a legitimate effort at reorganization is not reprehensible and is in accord with the aim of the Bankruptcy Code." *In re Chisum*, 68 B.R. 471, 473 (9th Cir.BAP 1986). However, filing solely for the purpose of stopping or delaying a foreclosure, without the ability or intention to reorganize, is an abuse and therefore is not the proper basis for the filing of a bankruptcy proceeding, i.e., the filing lacks good faith. *Cinema Service Corp. v. Edbee Corp.*, 774 F.2d 584 (3d Cir.1985).

Acting as an appellate court in the matter of *Weiszhaar Farms, Inc. v. Livestock State Bank*, 113 B.R. 1017, 1020 (D.S.D. 1990), the District Court for the District of South Dakota discussed the relationship between the automatic stay of § 362(a) and "good faith" in filing, as follows:

"Quite possibly the most significant attribute of filing for bankruptcy and warding off creditors is the automatic stay of 11 U.S.C. § 362. The automatic stay effects a number of goals of the Bankruptcy Code respecting control of creditor action. This control implicates the power of the bankruptcy court to protect its jurisdiction over assets of the debtor whether in his possession or in the physical custody of secured creditors.... [The bankruptcy court's] jurisdiction by injunction, a shield for both the bankruptcy court and debtor, became the debtor's sword when the Code provided that this injunctive power was to be self-executing upon the filing of a bankruptcy petition. And while there is no inherent abuse in availing oneself of the automatic stay, *manipulating the judicial process by reimposing the automatic stay through multiple filings works an unconscionable fraud on creditors.* Thus an abuse of § 362 occurs when the debtor has no intention of effectuating a realistic plan of reorganization and the bankruptcy court's self-executing injunction results in unnecessary and costly delays. Abuse of the automatic stay provision by attorneys and/or their clients mandates imposing the heavy-handed measures provided under Bankruptcy Rule 9011."

113 B.R. at 1020 (emphasis added) (citations omitted).

In *In re Russo*, 94 B.R. 127 (Bankr. N.D.Ill.1988), debtors obtained a Chapter 7 discharge, then filed a Chapter 13 case only one month after the closing of the Chapter 7 case. The question presented was whether, because debtors' underlying obligation to its mortgage lender had been discharged, debtors could, by the use of a Chapter 13 plan, compel the mortgagee to accept payments rather than foreclose. In the Chapter 13 proceeding, the lender asked the court to either vacate the automatic stay or to deny confirmation of debtors' plan on several grounds, including that the plan impermissibly attempted to modify the secured lenders rights under § 1322(b)(2) and it lacked good faith. As to the relationship between the reimposition of the automatic stay and good faith, the court observed:

The automatic stay is one of the most powerful weapons known to the law. It arises not from an order of court after a hearing on the merits, but upon the mere filing of a case. It is a Congressionally imposed stay, not a judicially imposed stay.

In the absence of extraordinary circumstances, its *reimposition* in a *second case* filed within one month after the closing of a prior case *should not be viewed with favor* by the courts. [This section quoted in *In re Penz*, 121 B.R. 602, 604 (Bankr.E.D.Okla.1990)].

\* \* \* \* \* \*

*Congress surely intended that a debtor achieve its goals by the filing of a single case.* This Court considers it a misuse of the bankruptcy process to file one case, then, failing to achieve the intended goals, to refile a second case.

*Russo*, 94 B.R. at 129 (emphasis added) (citations omitted); *see also In re Penz*, 121 B.R. 602, 604 (Bankr.E.D.Okla.1990); *In re Bodine*, 113 B.R. 134, 135 (Bankr.W.D.N.Y. 1990); *In re McKissie*, 103 B.R. at 192.

## SERIAL CHAPTER 13 FILINGS MAY RESULT IN AN IMPERMISSIBLE PLAN DURATION

■ Under § 1322(c), a Chapter 13 plan may not provide for payments beyond

three years, unless for cause the court allows more time, but the plan may not last longer than five years. Can debtors, who have not completed payment of their debts under the first plan, get around the § 1322(c) time limitation by filing successive cases that would in effect extend the payment period beyond five years? This was the question raised in *In re Thomas,* 123 B.R. 552 (Bankr.W.D.Tex.1991). There, debtor's first Chapter 13 was filed on April 2, 1989 and confirmed on July 21, 1989. The petition showed debtor's income as $13,500, and expenses of $12,467. The confirmed plan extended for 60 months and proposed to pay general unsecured creditors at 27% of their allowed claims. After approximately 18 months, debtor's first case was dismissed on August 27, 1990 for a material default in performance under the plan. [In the interim the debtor filed a motion to amend his plan stating income of $13,500, and expenses of $12,625. The matter was not decided before the case was dismissed.]

Debtor's second Chapter 13 was filed on September 28, 1990—only one month after the prior dismissal. Debtor's second plan proposed a payout of 5% to general unsecured creditors, and had a duration of 60 months. His income was listed as $17,499; his expenses at $19,000. There were no explanations of the changes in debtor's budgets which were filed only approximately two months apart. Was the second case filing permissible? The *Thomas* court didn't think so. It said:

> The congressional intent behind the statute is clear. In this Court's mind plan payment extensions beyond the five years by the use of serial filings should not be allowed where to do so would be to permit the Debtors to do in two cases what Congress has specifically prohibited in one case.
>
> \* \* \* \* \* \*
>
> 'In no event, however, may plan payments extend more than five years. 11 U.S.C. § 1322(c). Therefore, in every case a 'reasonable time' must be five years or less.... Yet if this Court were to confirm the present plan, the Debtor

and her husband jointly would have been allowed about seven and one-half years to cure the arrearage. Thus, the Jacksons' would have achieved in four cases (the first three of which failed) what Congress has prohibited a debtor from doing in one case.

> Attempts to use serial filings to achieve purposes otherwise unattainable under the Bankruptcy Code have been characterized as 'bad faith' by other Courts.' *Jackson,* supra at 474.

> The court adopts that reasoning here. Therefore, this Debtor's Plan, being his second five year plan, cannot be confirmed as, combined with the Plan in his immediately preceding Chapter 13 case (this one having been filed serially), the total plan payment period exceeds five years. To rule otherwise would allow this Debtor to gain from his prior default. To rule otherwise would open the door for exactly what Congress sought to avoid, i.e. manipulation of the Bankruptcy Code provisions through defaults, dismissals and serial filings to obtain what was prohibited to do in a single case.

*Id.* at 554.

## DEBTORS' PLAN MAY NOT MODIFY A MORTGAGE HOLDER'S RIGHT TO TIMELY PAYMENT EXCEPT TO "CURE" PRE–PETITION DEFAULTS WITHIN A REASONABLE TIME

■ Bankruptcy Code §§ 1322(b)(2) and (5) provide that debtor's plan may not modify the rights of a creditor secured by a mortgage in debtor's residence except that the debtor may cure pre-petition defaults within a reasonable time. Debtors are not permitted to cure post-petition defaults through a plan or plan modification. *In re Hollis,* 105 B.R. 1003, 1005 (N.D.Ala.1989) (citing *In re Nicholson,* 70 B.R. 398, 401 (Bankr.D.Colo.1987)); *see also In re Cotton,* 102 B.R. 891, 892 (Bankr.M.D.Ga. 1989).

■ Can a debtor defeat the requirements of § 1322(b)(2) and (5), i.e. pay post-petition defaults through a Chapter 13 plan, by failing to make residential mort-

gage payments in his or her first case, suffering a dismissal, then refiling a second Chapter 13 case, and proposing to pay first case "post-petition" default payments in the second case *as* "pre-petition" default payments through the plan and over the ensuing 36 months? This was the issue raised and discussed by the District Court in *In re Jones,* 105 B.R. 1007 (N.D.Ala. 1989).

In *Jones,* debtor filed a petition under Chapter 13 on December 19, 1985. At the time of the filing, arrearages to the mortgage-holder bank were $1,383. During the course of the case, debtor defaulted several times in making his post-petition payments to the bank. Because of these defaults, the bank brought three separate motions for relief from stay, all but the last of which was denied by the bankruptcy judge who simply ordered the defaulted payments to be paid through the plan. On January 30, 1989, at the third hearing, the court dismissed the case on the Trustee's recommendation that the plan, previously confirmed, was "not feasible". Two days after the dismissal, debtor filed a new Chapter 13 petition. At this time the "arrearages" to the bank were $6,925—$5,542 more than they were after approximately 3 years under the first plan.

At the second filing, the bank again brought a motion for relief from stay, and filed an objection to the confirmation of the plan, on the ground that "cause" existed based on debtor's non-performance under his plan. The bankruptcy judge again denied the bank's motion and overruled its objection to confirmation. The trial judge held that the bank was adequately protected under the plan by the ordering of (1) monthly payments, (2) a payment on the arrearage, and (3) a wage withholding order. Moreover, the trial court found no "cause" to lift the stay because debtor had testified that he had been injured on the job during the prior case but was now able to work. The trial court said:

> The creditor has asserted that the debtor's plan should not be confirmed because of the debtor's failure to comply with prior Court orders. [i.e., In the 1985 case to make payments under the confirmation order.] .... It is the creditor's position that the debtor's noncompliance and prior dismissal constitutes a 'willful failure of debtor to abide by order of the Court.' ... As already noted, the debtor has testified that [sic] has now recovered from the injuries and is continuing in the position of employment he has held for the past 15 years.... Inasmuch as the debtor is not guilty of a 'willful failure' to comply, and has proposed the Chapter 13 plan in good faith, this court must accordingly overrule the objection to confirmation.

*Jones,* 105 B.R. at 1010.

The bank appealed the bankruptcy court's decision to the District Court. The District Court observed that while Jones had indeed testified in March 1989 (during the second case, and apparently in response to the motion for relief from stay), for the very first time, that he was sick or injured during the first case, between September 1986 and August 1988, and therefore could not meet his obligations,

> ... [T]here is no medical evidence in the record as to the beginning or magnitude of Jones' impairment, or of his prognosis, or of his ability to work in any meaningful earning capacity during the period of disability he belatedly claimed. Moreover, there is nothing in the record to indicate that Jones ever notified the bankruptcy court of his injury until long after he had recovered.

> \*　\*　\*　\*　\*　\*

> Jones also chooses to ignore the fact that his case is a case of serial filing, as distinguished from the modification of a single Chapter 13 proceeding....

> [The new filing] now constitutes a so-called Chapter 26 (13 + 13 = 26). *In re Saylors,* 869 F.2d 1434 (11th Cir. 1989)....

> There are two recent cases which shed light on the propriety *vel non* of the serial filing of Chapter 13 petitions. The first is *In re McKissie,* 103 B.R. 189 (Bankr.N.D.Ill.1989)....

> The bankruptcy court [in *McKissie*] found that the debtor's second Chapter

13 case was not filed in good faith because 'debtors have not produced any evidence that there has been a *bona fide* objective change in their circumstances since the filing and dismissal of the first Chapter 13 case to justify the filing of their serial case.' 103 B.R. at 192.

*Jones,* 105 B.R. at 1010.

Thereafter, the District Court noted that in response to the bank's motions, Jones presented no evidence whatsoever of the changed circumstances between the dismissal of his first case and the re-filing of the second two days later. In concluding that the trial court was in error, the District Court continued by quoting from familiar cases, as follows:

> "It is a misuse of the bankruptcy process to file one case, then, failing to achieve the intended goals, to refile a second case. *In re Jackson,* 91 B.R. 473 (Bankr.N.D.Ill.1988). Refiling the second case rather than taking an appeal in the first case circumvents the appeal process." [Quoting *McKissie,* 103 B.R. at 192. This language is also quoted in *In re Russo,* 94 B.R. 127, 129 (Bankr. N.D.Ill.1988), and *In re Bodine,* 113 B.R. 134, 135 (Bankr.W.D.N.Y.1990).]

> "The undisputed facts and history of these cases by which the Debtors attempted a failed and abusive 'Chapter 26' show sufficient cause for the discretionary application of section 349(a) and a dismissal with prejudice for a period of one (1) year, other than the filing of a Chapter 7 case." [Quoting *McKissie,* 103 B.R. at 192.]

In dealing with Chapter 13 cases, a majority of the bankruptcy judges in the Northern District of Alabama, and in many other jurisdictions, routinely enter a 'prospective' or so-called 'drop-dead' order, which, by its terms, automatically lifts the automatic stay in the event a debtor subsequently fails to make a regular monthly residential mortgage payment as contractually provided. This reasonable accommodation to economic reality is totally inconsistent with what happened in Jones' case.

... [S]uffice it to say that *McKissie* frowns on the overt manipulation of a bankruptcy court for the purpose of preventing a foreclosure sale, and frowns on the strategy to such an extent that sanctions may be called for under Rule 11, F.R.Civ.P. [*In re Hollis,* 105 B.R. 1003, 1006 (N.D.Ala.1989).]

*Jones,* 105 B.R. at 1013–14.

## SERIAL FILING AND THE RES JUDICATA EFFECT OF AN ADEQUATE PROTECTION ORDER FROM A PRIOR CASE

In *In re Abdul–Hasan,* 104 B.R. 263 (Bankr.C.D.Cal.1989) debtors' residence was foreclosed post-petition by a mortgagee who had obtained relief from stay in a prior Chapter 13 case. The Court held that the "prospective relief" set out in the prior order was sufficient to relieve the mortgagee of any responsibility to seek relief from stay in the subsequent case. The previously granted "prospective relief," said the court, was valid and enforceable in the new case, on several grounds, including res judicata. "The rule of res judicata," said the court, "is that an order is binding in a subsequent action if it involves the same parties; the same issues; and it is valid, final and on the merits." *Id.* at 267. The court continued:

> Debtor's attorney claims that the issues are different because the debtor 'clearly had a change in financial circumstances during that time. She was able to file a new Chapter 13 and get a plan confirmed.' There is no evidence on the alleged change of circumstances and the mere filing and confirmation of a Chapter 13 plan does not raise a presumption of a positive change of circumstance. In fact the current Chapter 13 statement and plan show a negative change of circumstances. The debtor now reveals 4 dependent children instead of two, shows reduced monthly income ..., and states that she cannot cure the default in the 36–month period envisioned by Congress. *No evidence at all is presented to show a positive change of circumstances.*

> Res judicata fills several public purposes, all of which apply in this situation.

It preserves the judicial dispute resolution process against disrespect from multiple litigation of the same matter or multiple litigation with inconsistent results, it preserves courts against the burdens of repetitious litigation, and it provides a means of finality for ending private disputes....

The purposes stated above are particularly compelling in this type of case because the automatic stay is "automatic." It requires no showing by the debtor, but is invoked by the mere filing of a piece of paper and the payment of a $90.00 fee. Many debtors have used and abused this (as has the debtor in this particular case). The frustration of parties in dealing with the multiple filing case has been demonstrated over and over again.... There is no way available to the Court to prevent multiple filings and their detrimental effect on creditors who have previously fully and fairly litigated the automatic stay issues.

\* \* \* \* \* \*

This Court believes that it is the intent of Congress that all presumptions be on the side of the debtor at the time of the filing of a first bankruptcy. The automatic stay comes into being without the debtor taking any action to prove that she is entitled to it. When the creditor does seek relief from the stay, courts are reluctant to grant it to them until it becomes clear that the creditor is suffering detriment and that the debtor has not been able to provide adequate protection. Once this occurs, then relief from stay is granted. *If the debtor chooses to allow the bankruptcy to be dismissed and then refiles, she cannot start afresh as though there had never been a prior determination. She only gets one presumption, not a series of new ones at the cost of $90.00 each.*

**5.** Bankruptcy Code § 109(f), now renumbered as § 109(g), defines who is eligible to be a debtor in bankruptcy, and provides as follows:

(g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

*Abdul–Hasan,* 104 B.R. at 267–68 (emphasis added) (citations and footnote omitted).

## WHERE THE COURT FINDS DEBTORS' CASE OR PLAN FILED WITHOUT GOOD FAITH, THE CASE MUST BE DISMISSED, AND MAY BE DISMISSED WITH PREJUDICE UNDER § 349(a)

██ Upon the finding that a case has been filed without good faith, the case may be dismissed. *In re Wentworth,* 83 B.R. 705, 709 (Bankr.D.N.D.1988); *In re Lunsford,* 39 B.R. 490 (Bankr.N.D.Ga.1984). Ordinarily, under § 349(a) a case is dismissed without prejudice, but where the court finds "cause," the case may be dismissed with prejudice to re-filing further petitions. *In re Penz,* 121 B.R. 602, 604 (Bankr.E.D.Okla.1990); *In re McKissie,* 103 B.R. 189, 193 (Bankr.N.D.Ill.1989).

## DISMISSAL IN A SUBSEQUENT CASE IS APPROPRIATE WHERE THE PRIOR CASE WAS DISMISSED FOR DEBTOR'S WILLFUL FAILURE TO ABIDE BY ORDERS OF THE COURT, OR TO APPEAR BEFORE THE COURT IN PROPER PROSECUTION OF THE CASE

██ In *In re Haggerty,* 57 B.R. 384 (S.D.Miss.1986), debtor had filed three successive petitions. The first, filed on May 3, 1984, was dismissed 18 days later for failure to file schedules. The second, filed June 7, 1984, was dismissed five months later when debtor failed to make plan payments. And the third, filed December 27, 1984, was dismissed two months later under § 109(f)(1) [5] because his prior case had been dismissed within 180 days for failure to obey an order of the court. Debtor appealed the last dismissal. One of the grounds of his appeal was the alleged impropriety of the court in dismissing the

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

case without an evidentiary hearing concerning debtor's "willfulness" in failing to make his payments.

The appellate court disallowed this argument because debtor had not raised it at the hearing on the motion to dismiss, and debtor was precluded therefore from raising the issue on appeal. But, the appellate court opined, even if debtor could not be found to have waived his right to raise the issue, the evidence before the Court was sufficient to affirm the trial court decision. The second case, the court reminded us, was pending for four months, and the Debtor never made a payment to the Trustee. Debtor presented no evidence that such failure was beyond his control, and therefore, said the court, "In the absence of any mitigating proof, the record amply supports the conclusion that the second dismissal was due to debtor's willful violation of the court's order." *Haggerty*, 57 B.R. at 386.

What does § 109(g) require of a debtor?

Section 109(g) does not merely require a debtor to come physically before the bankruptcy judge when the case is set. Willful failure "to appear before the court in the proper prosecution of the case" can also include a Chapter 13 debtor's willful failure to pay under his plan. *In re Patel*, 48 B.R. 418, 419 (Bankr. M.D.Ala.1985). . . .

In short, the § 109(g) phrase "willful failure of the debtor . . . to appear before the court in proper prosecution of the case" includes willful and deliberate failure of debtors to perform their duties, . . . to make Plan payments to the Trustee, or in any case to attend statutory meetings of creditors. The provision would not be the meaningful tool intended by Congress if "appear before the court" meant they could thumb their noses at their duties so long as they come into court on dates set. . . .

Strategic use of serial filings, particularly when coupled with failure to carry out debtor's duties in bankruptcy, shows lack of good faith justifying dismissal.

Debtors' willful failure to make payments to the Chapter 13 Trustee not only constitutes grounds for dismissal under 11 U.S.C. § 1307(c)(4), but also constituted "willful failure to appear" before this Court in proper prosecution of the instant case, within the meaning of 11 U.S.C. § 109(g).

*In re King*, 126 B.R. 777, 780–81 (Bankr. N.D.Ill.1991) (citations omitted).

In *In re Howard*, 134 B.R. 225 (Bankr.E.D.Ky.1991), a secured creditor brought a motion to dismiss debtors' case on the ground that they were ineligible to be debtors under § 109(g)(1). Debtors' prior case, dismissed three months previously, had been dismissed for failure to perform the terms of the plan. The creditor argued that the plan confirmation "order" was an order which the debtors had failed to abide. While the motion to dismiss was denied, it is significant to underscore that it was denied on the court's finding, *based upon debtors' affidavit*, that debtors' prior conduct in failing to make payments was not a "willful failure" where (1) debtors had become unemployed and therefore were unable to make their plan payments, and (2) debtors' attorney had failed to inform them that under such circumstances, they could move to suspend plan payments. The burden of proof under 109(g) is on debtor to show his inability to obey the prior court order.

## ANALYSIS

Goldome objected to confirmation and requested dismissal on two bases: (1) Debtors were not post-petition current on their mortgage payments; and, (2) the filing lacked good faith. The second issue is considered first because, as discussed below, the "post-petition current" question in this matter is related to the issue of good faith.

## THE EVIDENCE SHOWS DEBTORS FILED THEIR SUCCESSIVE CASE WITHOUT GOOD FAITH AND THEREFORE DENIAL OF CONFIRMATION AND DISMISSAL IS APPROPRIATE

1. *Debtors failed to bear their burden of proof.*

Since the burden of proof regarding their good faith is on Debtors, and

since they failed to provide any evidence by way of declarations stating facts as to their changed circumstances, if any, we conclude that Debtors' filing lacked good faith. And, on that basis alone, the confirmation is denied and the case is dismissed with prejudice.

■ Even if lack of timely and proper response was not *per se* sufficient cause, the Court would still deny confirmation and dismiss the case. Goldome gave Debtors notice of its allegation that the petition was filed in bad faith. Without evidence to the contrary, the Court has drawn an inference of bad faith from the facts and information provided by Debtors' in previously filed documents.

Huertas filed the First case to save their house. That was permissible so long as they also intended to propose and perform a plan. They did propose a plan, but they failed, in a very material way, to perform. Shortly thereafter, without demonstrating any changed circumstances, they re-filed to again stop foreclosure. This is abusive; this tactic is proscribed. On that basis the Court finds the Debtors filed in bad faith. Confirmation is denied and their case is dismissed.

2. *Goldome's order for relief in the First Case is res judicata in the Second.*

■ Debtors' confirmation must be denied on numerous other grounds. First, its obvious they filed the Second case only to stop the foreclosure sale for a second time. Goldome's previously obtained adequate protection order, *res judicata* in the Second case, was enforceable, Debtors were in default, and Goldome was entitled to relief. Therefore, the filing for the purpose of specifically depriving Goldome of the benefit of its order, i.e. to re-impose a stay notwithstanding the prior order, and without remaining current, was an improper and abusive use of bankruptcy law. On that basis, Debtors' plan confirmation is denied and the case is dismissed.

3. *Confirmation must be denied because the plan duration is impermissible.*

■ The First and Second filings are essentially identical with respect to the list-ed creditors, the debts and the assets. Virtually nothing happened in the First case except that rather than reducing their pre-petition debt, Debtors' obligations increased while they enjoyed the protection of the Bankruptcy Code.

Confirmation of Debtors' Second plan would be nothing more than a modification of their First, i.e. confirming the Second plan would be tantamount to granting a two month suspension in the First and thereafter extending the plan duration, after the passing of 14 months, by an additional 56 months. Under such a scenario, general unsecured creditors would not be paid in full for nearly *6* years after their collection efforts were first stayed by Debtors' filing. This is proscribed under § 1322. And, on that basis confirmation is denied and the case is dismissed.

4. *Debtors' errors, inaccuracies and/or misrepresentations evidence their bad faith manipulation of Bankruptcy law.*

■ As discussed below, the accuracy of Debtors' budget and plan statements and information is seriously in doubt, and appears, without any evidence to the contrary, to show Debtors' willingness to "play loose" with facts for the purpose of deceiving the court and others. Such manipulations are themselves sufficient grounds to find bad faith, deny confirmation and dismiss the case. And on that basis, confirmation was denied and the case was dismissed.

5. *Confirmation of Debtors' proposed plan must be denied since it impermissibly modifies payments to Goldome.*

■ Because Debtors' Second case is really an unauthorized modification of the First case, they have, by proposing to pay First case post-petition default payments on Goldome's secured claim through the Second plan, impermissibly attempted to modify Goldome's rights. Such a plan is not confirmable over Goldome's objection,

and therefore confirmation is denied and the case is dismissed.

6. *Debtors' several bad faith acts and proposals are materially inconsistent with the spirit and purposes of Chapter 13.*

 The *bona fides* of the Huertas' Second filing, i.e. their sincerity *vis a vis* "the spirit and purposes of Chapter 13", is not presumed. It is their burden to prove. Again, because they filed no declarations to set forth facts justifying their successively filed case, and because of (1) the "inaccuracies" in documents they signed under penalty of perjury and filed with the Court, (2) their failure to avail themselves of plan modification in the First case, (3) their failure to make any significant payment to the Trustee in the First case, and (4) their apparent purpose to use the Second filing only to frustrate Goldome,—the Court finds their conduct not consistent with the spirit and purpose of Chapter 13 bankruptcy. On that basis, confirmation is denied and their case is dismissed.

7. *In their Second case, Debtors are not entitled to the presumptions and "favors" enjoyed in the First. Their failure to tender compensation to reimburse unfair costs incurred by Goldome in the First case is evidence of Debtors' bad faith.*

 The law of bankruptcy "favors" the granting of debtors' discharge and their right to obtain a "fresh start", and in furtherance of this social policy bankruptcy law grants debtors certain presumptions with respect to their "good faith" *in their first case*, but not in those which follow. With the filing of a serial or successive case within a short period [6] of the dismissal of the first, the Huertas may no longer be favored with the presumptions they enjoyed in their First. To permit them to do so would be grossly unfair and place impermissible burdens on the Trustee and creditors because of the time and expenses they have already incurred trying to get Debtors perform their obligations under the First plan. The parties cannot be returned to the positions they occupied at the initial filing unless they cure their failed performance during the First case and repay, or make assurance of repayment, the additional post-confirmation "out of pocket" expenses necessarily incurred by the Trustee and Goldome, or obtain an excuse of these "back to *status quo*" requirements.

The Huertas' willingness to shift the burden of further delay and expense to Goldome and the Trustee, and their unwillingness to offer to make those parties "whole" as a condition to starting all over again, is evidence of Debtors' lack of the proper Chapter 13 spirit. On that basis, confirmation is denied and the case is dismissed.

DEBTORS' FAILURE TO BE POST–PETITION CURRENT IN THE SUCCESSIVELY–FILED CASE FROM THE TIME OF THE FILING OF THE FIRST IS EVIDENCE OF LACK OF GOOD FAITH, AND IS SUFFICIENT CAUSE, WITHOUT EVIDENCE TO THE CONTRARY, TO DENY CONFIRMATION AND DISMISS DEBTORS' CASE WITH A 180–DAY BAR TO REFILING

 While there is no written rule, there is an unwritten "guideline" in the Central District of California, that where a successive case is filed within six months of a prior dismissal, then debtor, to fulfill the requirement of Local Rule 180 ¶ 23 that he or she be post-petition current to mortgage holders as a condition precedent to confirmation, must be "current" back to the filing date of the prior case. This guideline is consistent with the requirements of good faith discussed at length above. The "guideline" is not an inflexible

---

**6.** As set out below, some Bankruptcy Judges of the Central District of California, perhaps because of unique circumstances involving an epidemic of "repeat" filings, have adopted as an informal guideline, a period of six months between the time of the dismissal of a prior case, and filing of a successive case, as an appropriate length of time after which the presumption of debtor's good faith in filing may be appropriately reimposed. Such a guideline may, of course, be wholly inapplicable where debtor has brought sufficient facts before the Court.

rule, but generally operates to shift the burden in a successively filed case to the debtor, and on occasion becomes a condition under which debtor and lenders negotiate a resolution of the default problem.

In this case, as in all others where I have been asked to enforce the "guideline", I have treated the Huertas' failure to follow the "guideline" only as evidence of their bad faith. They could have made some legal or factual argument as to why the guideline should not be applied, but they didn't. Had they tendered sufficient money to Goldome at the confirmation hearing to bring them current from the First case, I would have deemed that to be some evidence of their good faith and would likely have confirmed their plan. But they didn't do that. I conclude that Debtors' failure to remain current to Goldome was a violation of the adequate protection order issued in the First case, as well as a failure to fulfill one of the indicia of good faith under *Metz*. And, for those reasons, confirmation is denied and the case is dismissed.

Finally, there being no evidence to the contrary brought by Debtors, the Court finds that Debtors, in their First case, willfully failed to abide by prior orders of the Court, or appear before the Court in proper prosecution of their case, and therefore their case is dismissed pursuant to § 109(g)(1), and they are enjoined from filing any further petitions in bankruptcy for a period of 180–days without further order of this Court.

SOME PARENTHETICAL COMMENTS AND OBSERVATIONS RE: THE HUERTAS AND OTHER SERIAL FILERS

Are debtors who experience additional financial difficulties during the pendency of

their first case without a remedy or course of action except to be thrown out of bankruptcy? No. They can, by motion, avail themselves of § 1323, and request an order to modify their plan. Huertas did not.

Whether Huertas confronted significant negative circumstances during their first case—events beyond their control which prevented them from performing their court-ordered duties to make plan payments,—we may never know. Instead, as is so typical of "repeat filers"[7], they did nothing, and by their defaults caused additional, post-confirmation, expenses and delays to be suffered by others. While Debtors did, on more than one occasion "cure" their defaults after various motions were filed, this Court is of the opinion that where Debtors knew they would be unable to perform, and did not immediately initiate action to obtain an order of relief of their plan obligations, but instead shifted the financial burden of bringing matters before the Court to others, the Debtors were derelict in their duties, thereafter proceeded in bad faith, and must now accept the consequences of their abandonment.

On reflection, the Court is not surprised by the carelessness of these Debtors, and too, their conduct is not entirely atypical. It is apparent that from the outset these debtors were less than diligent at best, or, more likely, less than honest, in their dealings with the Court and creditors. In support of this conclusion, reference is made to Debtors' budgets—the First, the amended First, and the Second. Without explanation coming from the Debtors, one has good cause to believe Debtors were simply "playing with the numbers". If they signed their First budget, *after reasonable inquiry*[8] as required under

---

**7.** Many "repeat filers" are represented by attorneys—often times the same attorney who appeared for debtors in the prior case. It appears to me that a significant part of pre-bankruptcy and continuing counseling by debtor's attorneys must include a thorough discussion of the concept of "changed circumstances", and instructions that debtor immediately contact the attorney in the event of changed circumstances that result in the inability to make timely payments. If that were done, the plan might be subject to

suspension or a modification, rather than dismissal and refiling.

**8.** In my view, one of the principal, and perhaps most neglected duties of attorneys who represent debtors, is to assist them with the "reasonable inquir[ies]" required of them before they advise or instruct debtors to "sign" their petition, statements and schedules. The client interview prior to the drafting and filing of the petition and schedules is critical to assisting the

Rule 9011, and under penalty of perjury, why would they have to amend their budget, rather drastically, two weeks later? And why if it cost $600 per month to feed a family of five in 1990, did it cost them only $350, some 14 months later in 1991, during a time when the kids were bigger and food costs had increased? [The standard for evaluating Debtors' expenses during the period remained the same—reasonable and necessary for family support.] Wouldn't these changes in Debtors' budget and expense reporting be the kinds of "warning flags" described in *Madrid?* See n. 8.

And what became of the money Debtors earned during the pendency of the first case? Debtors didn't pay it to the Trustee—she got only $1,800 of the $9,500 she should have received. Moreover, one of Debtors' cars was "repoed" during the "gap", so we may assume they didn't make those car payments. So, where's the money? It didn't show up as cash in hand or money in the bank at the time of their second filing only two months after the first dismissal. We simply don't know, and we don't know because Debtors didn't tell us.

Since we have no other facts before us, the only reasonable conclusion is that following dismissal of their first case Debtors simply chose to make no payments to Goldome, and then as Goldome was again ready to conduct its foreclose, they filed another bankruptcy petition to once more stop the sale. Where Debtors apparently couldn't or wouldn't perform their first plan, why should we credit them, without any evidence, with the ability and intention to perform essentially the same plan two months later? That the numbers in their Second statement and proposed plan make it appear they *could* perform is not persuasive because the numbers in their First case also made it appear that Debtors could perform then, too. But they didn't. Why? We don't know, but this time we are not required to presume their good faith and favor their second "fresh start".

## CONCLUSION

For all the foregoing reasons, Goldome's objection is sustained, confirmation of Debtors' proposed plan is denied, and the case is dismissed. Further, Debtors are enjoined from filing any further petitions in bankruptcy for a period of 180–days from the dismissal of this case. An order to this effect was previously signed and entered on December 23, 1991.

debtor's good faith. The Court, Trustee and creditors have a right to inquire: Has the attorney, as an officer of the court, owing a duty to the integrity of the system,

(1) *Explained* the requirement of full, complete, accurate and honest disclosure of all information required by debtor to be supplied?

(2) *Asked* probing and pertinent questions designed to elicit full, complete, accurate and honest disclosure from the client?

(3) *Checked* the debtor's responses in their petition, statements and schedules to be sure they are internally and externally consistent? And followed-up if they were not?

(4) *Demanded* of the client full, complete, accurate and honest disclosure of all information required by debtor prior to the attorney's signature being placed on debtor's documents and prior to filing?

(5) *Sought relief* from the Court of the client representation in the event the attorney learns that he or she has been mislead by the debtor?

To my mind, these actions are required in preparation of the first filing, but are even more crucial in the second. I believe a higher level of scrutiny into the attorney's pre-filing counseling should be made by the Court in the event of successive or serially-filed cases. If the attorney has failed to perform these duties, and a case is determined to have been filed in bad faith, then the Court may find the attorney liable for sanctions under Rule 9011, F.R.B.P. See, *In re Villa Madrid,* 110 B.R. 919 (9th Cir.BAP 1990) [Where there was a second Chapter 11 case filed to prevent foreclosure, and the BAP upheld sanctions against debtors attorney where he failed to heed the apparent warning flags of a bad faith filing and filed the second case without reasonable inquiry of the facts and law].